552 So.2d 971 (1989)
STATE of Florida, Appellant,
v.
Paul David CAYWARD, Appellee.
No. 89-00702.
District Court of Appeal of Florida, Second District.
November 15, 1989.
*972 Robert A. Butterworth, Atty. Gen., Tallahassee, and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellant.
James Marion Moorman, Public Defender, and Andrea Steffen, Asst. Public Defender, Bartow, for appellee.
SCHEB, Acting Chief Judge.
The state appeals the trial court's order suppressing the defendant's confession. The trial court ruled the confession was involuntary because the police intentionally fabricated laboratory reports and exhibited them to the defendant during an interrogation in an attempt to secure a confession. The trial court found that the police tactics violated the defendant's constitutional right to due process of law. We affirm.
The relevant facts are undisputed. The defendant is a nineteen-year-old male suspected by the police of sexually assaulting and smothering his five-year-old niece. The police had focused their investigation on the defendant. They conducted an extensive interview of the defendant in three stages. Although they suspected the defendant, they did not think they had sufficient evidence with which to charge him. With the knowledge of the state attorney's office, the police fabricated two scientific reports which they intended to use as ploys in interrogating the defendant. One false report was prepared on stationery of the Florida Department of Criminal Law Enforcement; another was prepared on stationery of Life Codes, Inc., a testing organization. These false reports indicated that a scientific test established that the semen stains on the victim's underwear came from the defendant. The police showed the reports to the defendant as a device to induce a confession. Some time later during the interview, the defendant confessed.
After an evidentiary hearing, the trial court found that the defendant's attendance at the interview in response to a request by the police was voluntary, that he was advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that he signed a form waiving those rights. The interview, conducted by a police detective and an investigator from the state attorney's office, lasted approximately two hours. The defendant repeatedly denied his involvement. Eventually he was shown the false reports the police had manufactured. The reports were presented as genuine, and their significance was explained to the defendant. After the interview concluded, the defendant asked, "What happens now?" The investigator told him, "We are going to the grand jury," and indicated that the state would seek the death penalty. The defendant then indicated his involvement, first unrecorded and later on tape.
The trial judge did not find any evidence of physical coercion. The court concluded, however, that the fabrication and exhibition of documents purporting to be laboratory reports from reputable organizations is police conduct which cannot be sanctioned. The court ordered that the "portion of the defendant's statement taken on April 13, 1988 that was given after he was either shown the fabricated reports or advised of their contents or of their incriminating nature or of their existence, whichever be first, is suppressed and shall not be used in evidence against him."
The state appeals, contending that the trial court erred in suppressing the defendant's statements. We have jurisdiction under Florida Rule of Appellate Procedure 9.140(c)(1)(B).
We begin our discussion with a recognition that a trial court's ruling concerning voluntariness of a confession comes to this *973 court cloaked in the same presumption of correctness which attends jury verdicts and final judgments. Stone v. State, 378 So.2d 765, 769 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980).
We recognize the basic principle that when conduct of law enforcement is outrageous, due process bars the government from invoking judicial process to obtain a conviction. United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). That the Florida Supreme Court is wedded to this principle is evidenced by its quotation with approval from Justice Stevens' dissent in Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "[D]ue process requires fairness, integrity and honor in the operation of the criminal justice system, and in its treatment of the citizen's cardinal constitutional protections." Haliburton v. State, 514 So.2d 1088, 1090 (Fla. 1987).
It has become well established that physical coercion by the police invalidates a confession on due process grounds. Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). For many years, however, the courts have focused on the more common and subtle form of coercion  psychological inducement. See Miranda. Since the coercion here was psychological and not physical, the state cites Wasko v. State, 505 So.2d 1314 (Fla. 1987), to support its argument that the per se involuntariness rule does not apply in Florida and voluntariness must be determined by the totality of the evidence. Roman v. State, 475 So.2d 1228 (Fla. 1985). The state argues that the trial judge erred in isolating the state's use of fabricated reports because he incorrectly elevated that one factor to a per se violation of due process.
We agree with the state that police deception does not render a confession involuntary per se. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). While Florida courts have frequently condemned the articulation by the police of incorrect, misleading statements to suspects, they have upheld the resulting confessions. Paramore v. State, 229 So.2d 855 (Fla. 1969); State v. Moore, 530 So.2d 349 (Fla.2d DCA 1988). See State v. Manning, 506 So.2d 1094 (Fla.3d DCA 1987). See also Burch v. State, 343 So.2d 831 (Fla. 1977). Police deception does not automatically invalidate a confession especially where there is no doubt that the defendant was read and understood his Miranda rights. Halliwell v. State, 323 So.2d 557 (Fla. 1975); Miller v. Fenton, 796 F.2d 598 (3d Cir.1986).
A clear majority of state and federal courts have taken a stand similar to that advanced by Florida's appellate courts. See, e.g., People v. Cortez, 143 Ill. App.3d 1024, 98 Ill.Dec. 242, 494 N.E.2d 169 (App.2d 1986); State v. Jackson, 308 N.C. 549, 304 S.E.2d 134 (1983), rev'd on other grounds, 479 U.S. 1077, 107 S.Ct. 1271, 94 L.Ed.2d 133 (1987); Moore v. Hopper, 389 F. Supp. 931 (M.D.Ga. 1974), aff'd, 523 F.2d 1053 (5th Cir.1975); Roe v. People, 363 F. Supp. 788 (W.D.N.Y. 1973).
The instant case, however, presents a different question and one which appears to be one of first impression not only in Florida but in the United States. The reporters are filled with examples of the police making false verbal assertions to a suspect, but counsel has not indicated nor has our research revealed any case in which the police actually manufactured false documents and used them precisely as the police did in this case. Our inquiry then is whether there is a qualitative difference between the verbal artifices deemed acceptable and the presentation of the falsely contrived scientific documents challenged here. We think there is, and we agree with the trial judge that the police overstepped the line of permitted deception.
It admittedly is difficult for us to draw a distinction purely on legal grounds in light of the sometimes egregious verbal misrepresentations which have previously been allowed. Our opinion, therefore, is the result not only of prior case law, but of a careful examination of traditional constitutional protections as well as practical considerations. Based on what we perceive as an intrinsic distinction between verbal assertions and manufactured documentation, *974 we draw what we hope will be a bright line by saying that the type of deception engaged in here has no place in our criminal justice system.
It may well be that a suspect is more impressed and thereby more easily induced to confess when presented with tangible, official-looking reports as opposed to merely being told that some tests have implicated him. If one perceives such a difference, it probably originates in the notion that a document which purports to be authoritative impresses one as being inherently more permanent and facially reliable than a simple verbal statement.
The very fact that our law insists that a suspect be advised of his Miranda rights and indicate that he understands them is almost an acknowledgment that individuals questioned by the police are entering an uncertain arena. See Miranda, 384 U.S. 436 at 458, 86 S.Ct. 1602 at 1619, 16 L.Ed.2d 694 at 714 (police interrogation is inherently coercive, and unless adequate protective devices are employed, no statement can truly be voluntarily given). Realistically, suspects given Miranda rights recognize that the object of a police inquiry is to confirm the suspicions held by the police. Police interrogations, even those of the least aggressive nature, are imbued with an atmosphere of confrontation. Thus, a suspect reasonably expects that police will make assertions and disclose or not disclose certain information in an attempt to observe the suspect's reactions.
We think, however, that both the suspect's and the public's expectations concerning the built-in adversariness of police interrogations do not encompass the notion that the police will knowingly fabricate tangible documentation or physical evidence against an individual. Such an idea brings to mind the horrors of less advanced centuries in our civilization when magistrates at times schemed with sovereigns to frame political rivals. This is precisely one of the parade of horrors civics teachers have long taught their pupils that our modern judicial system was designed to correct. Thus we think the manufacturing of false documents by police officials offends our traditional notions of due process of law under both the federal and state constitutions. U.S. Const. amends. V, XIV; Fla. Const. art. I, § 9.
In addition to our spontaneous distaste for the conduct we have reviewed in this matter, we have practical concerns regarding use of the false reports beyond the inducement of a confession. Unlike oral misrepresentations, manufactured documents have the potential of indefinite life and the facial appearance of authenticity. A report falsified for interrogation purposes might well be retained and filed in police paperwork. Such reports have the potential of finding their way into the courtroom.
Several factors make such a possibility realistic. First, police departments are involved in thousands of investigations each year. Second, many of these investigations result in criminal trials which swell the already staggering caseloads of the criminal justice system. Third, we must consider the long periods of time which often elapse between an investigation and the trial. During this time, those officials involved in the manufacturing of the false reports could leave for other jobs, die, or simply forget the circumstances under which the reports were obtained. This dangerous possibility is exacerbated by the common availability of photo reproduction processes, conducive to the widespread dissemination of documents. Paperwork is an inherent necessity of modern law enforcement, and multiple copies of documents are made and filed in different departments according to various filing systems. Even if some copies were properly marked as false or even destroyed, other copies might remain and cause dangerous confusion.
We are further concerned that false documents retained in police or state attorney's files might be disclosed to the media as a result of the public records law. A suspect's reputation could be unwittingly yet unfairly and permanently marred and his right to a fair trial jeopardized by the media's innocent reporting of falsified documents.
*975 We can also conceive of an unintended scenario where a manufactured document, initially designed only for use in interrogation, might be admitted as substantive evidence against a defendant. Although one hopes that such an error would be discovered in preparation for trial, the reality of our courts' heavy caseloads is that counsel and trial judges routinely accept as true documents which appear to be reliable reports from known government and private agencies. Section 90.902, Florida Statutes (1987), a part of the evidence code, makes it unnecessary to authenticate with extrinsic evidence documents which purport to be from any state department, officer, or agency. We note that one of the two manufactured reports in issue here could be classified as a self-authenticating document.
We shudder to think of the impact that questionable authenticity of court records might have not only on the trial level, but on the appellate level. We are routinely presented with documents in court files which we must assume to be genuine. To sanction the manufacturing of false documents, which have the potential of being admitted as substantive evidence, would severely diminish our confidence in relying upon facially valid documents in court files.
Additionally, were we to approve the conduct taken in this case, we might be opening the door for police to fabricate court documents, including warrants, orders, and judgments. We think that such a step would drastically erode and perhaps eliminate the public's recognition of the authority of court orders, and without the citizenry's respect, our judicial system cannot long survive.
A final factor, which weighs heavily in our decision, concerns the increased confidence the public generally feels toward the police. This feeling of assurance has been earned over the course of several decades by increased professionalism of law enforcement agencies, education, and community involvement. We recognize that law enforcement officers must be allowed a degree of latitude in interrogating suspects, and we acknowledge the role of confessions in the administration of the criminal justice system. We must, however, decline to undermine the rapport the police have developed with the public by approving participation of law enforcement officers in practices which most citizens would consider highly inappropriate. We think that for us to sanction the manufacturing of false documents by the police would greatly lessen the respect the public has for the criminal justice system and for those sworn to uphold and enforce the law. In a word, in administration of the criminal law, we simply cannot allow the end of securing a confession to justify the means employed in this case.
We certify the following question to the Supreme Court of Florida as a question of great public importance:
DOES THE FABRICATION AND EXHIBITION OF FALSE DOCUMENTS TO A SUSPECT BY POLICE IN AN ATTEMPT TO INDUCE A CONFESSION VIOLATE DUE PROCESS RIGHTS UNDER FEDERAL AND STATE CONSTITUTIONS?
Affirmed.
HALL and THREADGILL, JJ., concur.