Present: Carrico, C.J., Compton, Stephenson, Whiting,[1] Lacy, Hassell, and Keenan, JJ.

THOMAS JEFFERSON MIDKIFF

v.  Record No. 941716     OPINION BY JUSTICE ELIZABETH B. LACY
                                    September 15, 1995
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

I.

Thomas Jefferson Midkiff was convicted by a jury in the Circuit Court of Carroll County of two counts of first degree murder and one count of arson.  He received a sentence of life imprisonment for each murder conviction and 10 years' imprisonment and a fine of $15,000 for the arson conviction.

On appeal to the Court of Appeals, Midkiff challenged the admissibility of a confession he made during a police interrogation.  Midkiff contended that during the course of the questioning, he effectively invoked his constitutional right to counsel and his right to remain silent and that the exercise of these rights was not honored by his interrogators. Additionally, Midkiff maintained that, considering the totality of the circumstances, his confession was involuntary.

The Court of Appeals denied Midkiff's petition for appeal, concluding that under the totality of the circumstances Midkiff voluntarily answered questions from the officers and that his statement, "I'm scared to say anything without talking to a lawyer," was not a clear and unambiguous invocation of either

---

[1]Justice Whiting participated in the hearing and decision of this case prior to the effective date of his retirement on August 12, 1995.

his right to counsel or his right to remain silent. We granted Midkiff's petition for appeal on these same issues and will affirm the judgment of the Court of Appeals.

II.

At 8:00 p.m. on December 3, 1991, the Hillsville Volunteer Fire Department was dispatched to the scene of a fire at a Carroll County residence. Inside, fire fighters found the bodies of Sheila Marie Ring and her two-year-old daughter, Jasmine Sutphin. Although the bodies were badly burned, subsequent autopsies revealed that both victims died from wounds inflicted prior to the fire. The cause of Ring's death was determined to be multiple stab wounds. Sutphin died from a single cut to her throat.

During the course of the investigation, Ring's landlord, Rhudy Lineberry, told investigators that he had seen a man on the porch of Ring's residence around 5:30 p.m. on the evening of the fire. Lineberry later identified this man as Midkiff. After being informed by his brother-in-law that he was a suspect, Midkiff voluntarily went to the sheriff's office for questioning on December 5, 1991, at 10:40 p.m. Midkiff was read his Miranda rights before being questioned. After approximately 20 minutes of questioning, Midkiff agreed to go to the state police headquarters in Wytheville for a polygraph examination and further interrogation. Although he initially denied any involvement with the murders and the arson, during

- 2 -

the course of questioning at Wytheville Midkiff orally confessed to both murders and signed two written confessions. He was given his <u>Miranda</u> rights twice more at Wytheville, once prior to taking three polygraph examinations and again before signing the written confessions.

### III.

Midkiff relies on two exchanges during the course of his interrogation in Wytheville to sustain his contention that he invoked his constitutional rights. During post-polygraph questioning by State Police Special Agent T.S. Svard, the following conversation transpired:

> MR. SVARD: This is the only job I've had in twenty-three (23) years where I can actually help people. You can't help them in uniform. You can't help them out there. Here, I can help them, help them. So I want you to tell me what happened.
>
> MR. MIDKIFF: I'll be honest with you, I'm scared to say anything without talking to a lawyer.
>
> MR. SVARD: Well, that's entirely up to you, but, but . . .
>
> MR. MIDKIFF: Because I, I got hoodooed big time back in, when I was in, now, don't get me wrong, I ain't . . .
>
> (recorder is turned off)

After the recorder was turned back on, Sheriff Carrico began questioning Midkiff.

> SHERIFF CARRICO: Let's talk about it. Be up front with me. I'll be up front with you. I'll get you every bit of help I can. Was you over there? Talk to me, T.J.
>
> MR. MIDKIFF: I don't got to answer that, Dick, you know.

SHERIFF CARRICO:  No.  You've got to tell me.  I can't just up and say T.J., I got to, I got to listen to you.  You've got to tell me and the only way that I can get you help is for you to tell me.

A.

Midkiff relies on the statement, "I'll be honest with you, I'm scared to say anything without talking to a lawyer," to support the contention that his confession should be suppressed because he invoked his right to counsel.  Since the United States Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 474 (1966), courts have recognized that the assertion of the right to counsel is a significant event and that thereafter all questioning must be suspended until an attorney is present.  In the years since Miranda, it has become well established that once an accused expresses a desire to exercise his right to counsel, authorities may not further interrogate the accused until counsel is present unless the accused initiates further conversation or exchanges with the authorities.  Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).  Miranda and its progeny do not permit the police to continue to interrogate an accused in custody if he has "clearly asserted his right to counsel." Edwards, 451 U.S. at 485.

This Court has consistently held that a clear and unambiguous assertion of the right to counsel is necessary to invoke the Edwards rule.  See Mueller v. Commonwealth, 244 Va. 386, 422 S.E.2d 380 (1992), cert. denied, 507 U.S. ___, 113

- 4 -

S.Ct. 1880 (1993); King v. Commonwealth, 243 Va. 353, 416 S.E.2d 669, cert. denied, 506 U.S. ___, 113 S.Ct. 417 (1992); Eaton v. Commonwealth, 240 Va. 236, 397 S.E.2d 385 (1990), cert. denied, 502 U.S. 824 (1991). Recently, the United States Supreme Court, while recognizing that good practice suggests that the police should attempt to clarify ambiguous statements, nevertheless held that, after a voluntary and knowing waiver of Miranda rights, officers may continue questioning until the suspect clearly and unequivocally requests an attorney. Davis v. United States, ___ U.S. ___, ___, 114 S.Ct. 2350, 2356-57 (1994). Therefore, the issue is whether the statement, "I'll be honest with you, I'm scared to say anything without talking to a lawyer," was a clear and unambiguous assertion by Midkiff of his right to counsel.

In prior decisions, we have been faced with the task of evaluating statements similar to the one that Midkiff asserts is a clear invocation of his right to counsel. We have held that defendants' questions, "Do you think I need an attorney here?," Mueller, 244 Va. at 396, 422 S.E.2d at 387, "You did say I could have an attorney if I wanted one?," Eaton, 240 Va. at 250, 397 S.E.2d at 393, and "Didn't you say I have the right to an attorney?," Poyner v. Commonwealth, 229 Va. 401, 410, 329 S.E.2d 815, 823, cert. denied, 474 U.S. 865 (1985), fell short of being clear assertions of the right to counsel. Further, the United States Supreme Court recently held that the

statement, "Maybe I should talk to a lawyer," was not an invocation of the right to counsel and, therefore, subsequent statements by the accused did not need to be suppressed. Davis, ___ U.S. at ___, 114 S.Ct. at 2357.

Midkiff's statement falls within the category of statements which do not clearly and unambiguously request an attorney. The statement, "I'm scared to say anything without talking to a lawyer," expresses his reservation about the wisdom of continuing the interrogation without consulting a lawyer; however, it does not clearly and unambiguously communicate a desire to invoke his right to counsel. Midkiff's statement, similar to those of the defendants in Mueller, Eaton, and Poyner, fell short of requesting counsel in a clear and unambiguous manner.

B.

Similar considerations are raised by Midkiff's argument concerning his right to remain silent. Relying on the statements, "I'll be honest with you, I'm scared to say anything without talking to a lawyer" and "I don't got to answer that, Dick, you know," Midkiff maintains that he invoked his right to remain silent. Miranda recognized that if a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Miranda, 384 U.S. at 473-74. However, this Court has stated that "Miranda should not be read

so strictly as to require the police to accept as conclusive any statement, no matter how ambiguous, as a sign that the suspect desires to cut off questioning." Lamb v. Commonwealth, 217 Va. 307, 312, 227 S.E.2d 737, 741 (1976).

Considering Midkiff's statements in context, it is clear that both are statements expressing reservations about discussing the case but do not invoke his right to remain silent. The transcript of the interrogation session excerpted above shows that Midkiff was interrupted by Agent Svard. When Midkiff's statement is examined without Svard's interjection, "I'll be honest with you, I'm scared to say anything without talking to a lawyer . . . [b]ecause I, I got hoodooed big time back in, when I was in, now, don't get me wrong . . .," it is clear that Midkiff merely expressed his reservations about answering questions based on his past experience with the criminal justice system. As we noted recently, "[i]t is true that [the defendant's] statements can be perceived as a reservation about the wisdom of continuing the interrogation. However, in spite of whatever reservations he may have had, he elected to proceed with the interrogation and failed to exercise his right to terminate questioning." Burket v. Commonwealth, 248 Va. 596, 610, 450 S.E.2d 124, 132 (1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1433 (1995).

Similarly, the second statement, "I don't got to answer that, Dick, you know," is simply an affirmation that Midkiff

understood his right to remain silent.  Nothing within that statement connotes a desire to cease all questioning.  Here again, we decline to read Miranda so narrowly as to compel police interrogators to accept any statement, no matter how equivocal, as an invocation of the right to remain silent.  As we noted in Akers v. Commonwealth, 216 Va. 40, 46, 216 S.E.2d 28, 32 (1975), had Midkiff wished to terminate the questioning he could have simply said "I do not want to answer any more questions."

IV.

Midkiff's last contention is that his confession was involuntary.  The standard of review for determining whether a defendant's confession was voluntary is well established.

> "Whether a statement is voluntary is ultimately a legal rather than factual question.  See Miller v. Fenton, 474 U.S. 104, 110, 106 S.Ct. 445, 450 (1985).  Subsidiary factual questions, however, are entitled to a presumption of correctness.  Id. at 112, 106 S.Ct. at 451.  The test to be applied in determining voluntariness is whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'  Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973).  In determining whether a defendant's will has been overborne, courts look to 'the totality of all the surrounding circumstances,' id. at 226, including the defendant's background and experience and the conduct of the police, Correll v. Commonwealth, 232 Va. 454, 464, 352 S.E.2d 352, 357 (1987); Stockton, 227 Va. at 140, 314 S.E.2d at 381."

Burket v. Commonwealth, 248 Va. at 611, 450 S.E.2d at 132 (citations omitted).  If the suspect's "will has been overborne

- 8 -

and his capacity for self-determination critically impaired," the confession is considered involuntary and its use is unconstitutional. Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). Voluntariness is a question of law, subject to independent appellate review. Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992). The test of voluntariness is whether, considering the totality of the circumstances, the confession was "the product of an essentially free and unconstrained choice by its maker." Schneckloth, 412 U.S. at 225. In assessing the surrounding circumstances, courts will consider the defendant's background and the details of the interrogation. Gray v. Commonwealth, 233 Va. 313, 324, 356 S.E.2d 157, 163, cert. denied, 484 U.S. 873 (1987).

The record in this case indicates that Midkiff's will was not overborne and his capacity for self-determination was not impaired. Although Midkiff and Sheriff Carrico were friends, there is no evidence that Sheriff Carrico used any undue influence to get Midkiff to discuss the crimes during interrogation. Sheriff Carrico's offer to get Midkiff "help" if he talked to him about the murders cannot be considered coercion or inducement. Midkiff's confession was not any less a "free and unconstrained choice" by virtue of this friendship. Furthermore, Midkiff is no stranger to the criminal justice system. Prior to the contested charges, Midkiff had been

convicted of five felonies, starting at the age of eighteen. He was 27 years old at the time of the murders in this case. It is apparent that Midkiff has experienced several prior police interrogations.

Additionally, while the interrogation process lasted well into the early morning hours of December 6, 1991, and took place at a location approximately 40 miles from Midkiff's home, these factors are not sufficient to establish that his will was overborne. All police interviews of suspects have coercive aspects to them by virtue of the fact that the interrogating officer is part of a system which may ultimately charge the suspect with a crime. Oregon v. Mathiason, 429 U.S. 492, 495 (1977). With regard to the investigation in this case, Midkiff voluntarily went to the sheriff's office for questioning after learning from his brother-in-law that Sheriff Carrico wanted to talk to him. In fact, when he was initially given his Miranda rights at the sheriff's office, Sheriff Carrico testified that Midkiff said something to the effect that "he didn't need to know them, that he already knew them." Later, Midkiff willingly went to the state police station to submit to polygraph examinations and was again given his Miranda rights before the polygraphs and before signing two written confessions. In Midkiff's second statement, he acknowledged that he "freely" waived his rights. The evidence demonstrates that Midkiff voluntarily, knowingly, and intelligently waived

his <u>Miranda</u> rights and agreed to submit to questioning. Viewing the totality of the circumstances, the evidence simply does not suggest any other conclusion.

V.

In conclusion, we find no reversible error in the judgment of the Court of Appeals.  Midkiff did not clearly and unambiguously invoke his constitutional right to counsel or his right to remain silent.  Under the totality of the circumstances, his confession was voluntary.  Therefore, for the reasons set forth, we will affirm the judgment of the Court of Appeals.

<u>Affirmed.</u>