COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Bray and Senior Judge Hodges
Argued at Norfolk, Virginia


CHARLES AARON ARTHUR

                                         OPINION BY
v.      Record No. 1609-95-1      JUDGE WILLIAM H. HODGES
                                       FEBRUARY 4, 1997
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                     Robert W. Stewart, Judge

             I. Lionel Hancock, III (Robert L. Bohannon;
             Bohannon, Bohannon & Hancock, P.C., on
             briefs), for appellant.

             John H. McLees, Jr., Assistant Attorney
             General (James S. Gilmore, III, Attorney
             General, on brief), for appellee.


        Charles Aaron Arthur (appellant) was convicted of murder.

He contends on appeal that the trial court erred in denying the

motion to suppress his confession where he gave an inculpatory

statement only after the police created and showed him falsified

fingerprint and DNA reports implicating him in the crime.  We

disagree and affirm the conviction.

                                I.

        Catherine Benson was beaten to death on August 24, 1993, in

the home of Jerry Hartley, where she worked as a part-time

housekeeper.  Police discovered blood in a bathroom sink, and,

although neither Benson nor Hartley smoked, a red Bic cigarette

lighter was found near the body.  No identifiable fingerprints,

other than the victim's and the homeowner's were found at the

scene, and no signs of forcible entry were evident.

At 2:30 a.m. on August 25, police stopped appellant as he drove Benson's pickup truck. Appellant identified himself as Benson's boyfriend and said he was driving to her job because she had not returned home the previous evening, as expected. Appellant told the police that he had been to Hartley's home at 9:00 p.m., had seen Benson's car in the driveway, and had assumed she was out to dinner with Hartley. Appellant said he had never been inside Hartley's home. Police did not suspect appellant of the murder and made arrangements to take him to the medical examiner's office to identify the body.

At the medical examiner's office, appellant, contrary to his earlier statement, said that he had been inside Hartley's house the day before, to use the bathroom. Detective Myers told appellant that he was a suspect, that forensic evidence had been sent for analysis, and that the police would contact him again. Appellant denied that he killed Benson.

On November 9, 1993, appellant again was interviewed by the police. He continued to deny involvement in the murder. Although some of the lab reports had been returned, they did not implicate appellant. Myers told appellant only that all of the forensic reports had not come back from the lab. The remaining reports, however, did not implicate appellant in the murder.

Police prepared "dummy" reports, indicating that a fingerprint on the Bic lighter was appellant's and that hair found in a drop of blood at the scene was his. Police kept the

false documents in a file separate from the actual investigative documents and lab reports. At an interview on March 24, 1994, Myers told appellant that lab reports showed his hair had been found at the scene, in the victim's blood, and that his fingerprint had been identified on the lighter. Myers put the false documents where appellant could read some of their contents.

The detective asked appellant how his hair and fingerprint could be at the scene, and suggested that either appellant had found Benson's body, become frightened and left, was present when Benson was killed, or was the killer. Appellant, reiterating his earlier statements to the police, denied that he had been at the murder scene.

Myers then told appellant that the police believed that he loved Benson and that the killing was unintentional. The detective said that the victim's family knew appellant was a suspect, knew he loved the victim, but wanted to know why the killing had happened. At that point, a teary-eyed appellant described how he had killed Benson. Police tape-recorded appellant's confession. Appellant initialed each page of the transcription of the tape and signed the last page. At the detective's suggestion, appellant, alone in the interrogation room, wrote a letter to Benson's parents, in which he apologized and asked for forgiveness.

The trial court held a hearing on appellant's motion to

suppress his statements.  Applying the totality of the circumstances test, the judge found the confession was voluntary and denied the motion.

## II.

The Commonwealth must prove, by a preponderance of the evidence, that an accused's confession was freely and voluntarily made.  Wilson v. Commonwealth, 13 Va. App. 549, 554, 413 S.E.2d 655, 658 (1992).  If the accused's "'will has been overborne and his capacity for self-determination critically impaired,' the confession is considered involuntary and its use is unconstitutional."  Midkiff v. Commonwealth, 250 Va. 262, 268, 462 S.E.2d 112, 116 (1995) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973)).

> The test of voluntariness is whether, considering the totality of the circumstances, the confession was "the product of an essentially free and unconstrained choice by its maker."  In assessing the surrounding circumstances, courts will consider the defendant's background and the details of the interrogation.

Id. at 269, 462 S.E.2d at 116 (citation omitted).

The voluntariness of a confession "is a question of law, subject to independent appellate review."  Id. at 268-69, 462 S.E.2d at 116.  This Court must "conduct an independent review" of the question.  Wilson, 13 Va. App. at 551, 413 S.E.2d at 656.  We are bound, however, by "the trial court's subsidiary factual findings unless those findings are plainly wrong."  Id.

-4-

Virginia appellate courts consistently have held that a lie by a law enforcement officer "does not, in and of itself, require a finding that a resulting confession was involuntary." Rodgers v. Commonwealth, 227 Va. 605, 616, 318 S.E.2d 298, 304 (1984). See, e.g., Smith v. Commonwealth, 219 Va. 455, 469, 248 S.E.2d 135, 144 (1978), cert. denied, 441 U.S. 967 (1979); Novak v. Commonwealth, 20 Va. App. 373, 380, 457 S.E.2d 402, 405 (1995).

> In Wilson, we stated:
>> A deliberate falsehood by a police officer in the course of his duties may undermine the respect that significant segments of the public may have for law enforcement and the system of justice. This concern, however, is not the basis upon which we must determine if the police have obtained an involuntary confession.

Wilson, 13 Va. App. at 554, 413 S.E.2d at 658. A falsehood by the police "is only one factor that must be considered in determining whether [the defendant's] will was overcome and his capacity for self-determination critically impaired." Id.

Appellant concedes that a verbal lie by the police does not, in itself, invalidate a confession. He invites us, however, to draw a "bright line" where false documents are used. We reject that invitation in favor of application of the totality of the circumstances test.[1]

_____

[1] In Sheriff, Washoe County v. Bessey, 914 P.2d 618 (Nev. 1996), the Nevada Supreme Court refused to draw such a "bright line" in a case involving falsified reports of semen stains. Applying the totality of the circumstances test, the court found Bessey's confession was voluntary. But see State v. Cayward, 552 So. 2d 971 (Fla. Dist. Ct. App. 1989), review dismissed, 562 So.

As the trial judge observed, appellant was a man of normal intelligence, serving in the Navy, and living on his own. There was no indication that he was under the influence of any substance of any kind at the time of the confession. The trial judge noted that appellant had been advised of his rights on more than one occasion, including at this interview, and had not requested an attorney. He was fully able to make choices; he had been interviewed several times prior to the March 24 interview, had refused to incriminate himself, and each time had been permitted to leave.

The officers did not threaten appellant, make promises to him, or deprive him of food, water or use of restroom facilities. The officers did not emphasize the evidence they had, their ability to get a conviction, or the punishment appellant might receive if convicted. Myers testified that he deliberately suggested ways which the evidence might be at the scene without appellant having been the actual killer.

Furthermore, appellant did not immediately confess after being shown the "dummy" reports, but admitted his involvement only after the detective later told him that the victim's parents wanted to know why the killing had happened. Finally, appellant confessed several times. He made a statement orally to the

_____

2d 347 (Fla. 1990) (court drew "bright line" between verbal lie and false written report and found that latter offended traditional notions of due process).

police, gave a taped statement, signed the written transcription of his statement, and wrote a letter, in private, to the victim's parents.

Upon our independent review of the voluntariness of appellant's confession, we conclude that the use of the fabricated fingerprint and DNA reports did not overcome appellant's will or critically impair his capacity for self-determination.  Therefore, we affirm the conviction.

<u>Affirmed.</u>
