COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Coleman and Willis
Argued at Salem, Virginia


KENNETH WAYNE BOOTHE, JR.
                                MEMORANDUM OPINION[*] BY
v.          Record No. 1703-96-3    JUDGE JERE M. H. WILLIS, JR.
                                        MAY 27, 1997
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF SMYTH COUNTY
                    A. Dow Owens, Judge Designate

            Charles F. Lincoln for appellant.

            Michael T. Judge, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.



        On appeal from his conviction for aggravated sexual battery,

Kenneth Wayne Boothe, Jr. contends that the trial court erred in

refusing to suppress statements he made to the police.

Specifically, he argues that the trial court erred in finding:

(1) that he was not in custody at the time he made the

statements, (2) that he was properly advised of his Miranda

rights, and (3) that he did not request an attorney.  Because we

find that Boothe was properly advised of his rights and did not

request an attorney, we affirm the conviction.

                              I.

        At the time of the offense, Boothe lived with Norma Jean

Hall and her three-year-old daughter.  On the evening of April

10, 1995, Hall's daughter complained that her "pee pee hurt[]."

_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Susan McFail, a friend of Hall's, observed blood in the child's vagina and noticed that the surrounding area was "real red." Boothe, Hall, and McFail took the child to the emergency room at 10:50 p.m.

Upon arriving at the hospital, Boothe sat in the emergency room and Hall accompanied her daughter to the examination room. Police officers and social workers arrived shortly thereafter. McFail talked with two police officers and a social worker in a triage room adjacent to the emergency room. After she left the room, Boothe went in to talk to the police. Boothe gave signed statements to the police at three separate times: 1:20 a.m., 3:35 a.m., and 4:20 a.m.

Officer O'Dell conducted the first interview. Officer Sheffield, two social workers, and possibly another officer were also present. Helen Frisbie, one of the social workers present, had known Boothe for approximately ten years. Prior to asking Boothe any questions, O'Dell explained to Boothe his Miranda rights through a form which stated:

> (a) You have the right to remain silent.
>
> (b) Anything you say can be used against you in court.
>
> (c) You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
>
> (d) If you cannot afford a lawyer one will be appointed for you if you wish, if you are charged with an offense.

O'Dell orally explained the foregoing rights to Boothe and further advised him, "At any time that he spoke with us, that he could choose to stop, and he could choose at any point not to answer any questions that we asked him. Or, at any point, he could stop and ask for an attorney."

Boothe testified that he told O'Dell that he could not afford a lawyer. O'Dell did not recall that statement. He testified that Boothe never asked for a lawyer and never expressed a desire to speak with a lawyer before answering questions. O'Dell testified that had Boothe expressed a desire to confer with a lawyer, all questioning would have stopped.

O'Dell testified that Boothe stated that he understood his rights, had no further questions, agreed to talk to the officers and then signed the waiver form. Boothe was not under arrest at that time and was free to leave. Dr. Jeff Farrow, a psychologist, testified that although Boothe was of borderline intelligence, he was competent to stand trial and capable of understanding advice of his <u>Miranda</u> rights.

In his first statement, Boothe denied that he had injured the child. At the conclusion of the first interview, everyone left the room. O'Dell went to check on the victim. Sheffield went outside to smoke a cigarette. Boothe left the lobby and joined Sheffield outside. While outside, Boothe expressed concern to Sheffield about going to jail. Sheffield replied that if Boothe had something else he wanted to say, they would listen.

Boothe told Sheffield that "he may have accidentally touched the child." Sheffield and Boothe then returned to the triage room.

At the beginning of the second interview, O'Dell informed Boothe that he was not under arrest, that "[h]e was free to leave" and that he was "free to not answer questions if he so desired." Boothe acknowledged that he understood his rights and stated that he wished to speak with the officers and social workers. At this point, two social workers and three or four police officers were present. Boothe gave a second statement at 3:35 a.m., admitting that he had accidentally touched the victim while bathing her that morning.

O'Dell then left the room. Boothe and Sheffield remained, discussing "vehicle mechanics or something of that nature." During their conversation, Boothe told Sheffield that he "felt better that he had gotten that off his mind," referring to his statement that he accidentally touched the victim. Sheffield told Boothe that if there was anything else he wanted to tell them, they would be "glad to speak with" him. After Boothe told Sheffield that "there may have been some more injury," Sheffield contacted O'Dell.

A third statement was taken at 4:20 a.m. O'Dell again asked Boothe if he understood his rights, and Boothe responded "yes." Boothe, O'Dell, Frisbie, Sheffield, and another police officer were present. In response to questioning directed primarily by Frisbie, Boothe confessed to "touching" the victim on multiple

- 4 -

occasions.  He stated that he was admitting his conduct because he feared it might lead eventually to "sexual activities." Boothe was arrested after he gave the third statement.

## II.

Assuming, without deciding, that Boothe was in custody when he gave the statements, we hold that he was given proper and adequate advice of his rights as required by Miranda v. Arizona, 384 U.S. 436 (1966).  Miranda requires that before commencing a custodial interrogation, the police must inform the suspect that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."  Miranda, 384 U.S. at 479.  No precise form of recital is required to satisfy the Miranda requirement.  Duckworth v. Eagan, 492 U.S. 195 (1989).  A reviewing court need only inquire whether the warning given reasonably conveyed understanding of his rights to the suspect.  California v. Prysock, 453 U.S. 355, 359 (1981).

The written and oral advice given Boothe satisfied the Miranda requirement.  See Poyner v. Commonwealth, 229 Va. 401, 405, 407-11, 329 S.E.2d 815, 820, 821-23 (1985), cert. denied, 474 U.S. 865 (1985).  Boothe's acknowledgment that he understood his rights, together with Dr. Farrow's testimony that Boothe was capable of understanding his rights, supports the trial court's

finding that Boothe did in fact understand his rights and gave his statements voluntarily.

### III.

Boothe next contends that his rights under <u>Miranda</u> were violated because the police continued to question him after he invoked his right to counsel. The record does not support this contention. When Boothe stated that he could not afford an attorney, O'Dell explained that he could request an attorney at any time and the questioning would stop. Boothe never asked to consult an attorney and never expressed the desire to consult an attorney before answering questions.

In <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981), the United States Supreme Court prohibited police from continuing to interrogate a suspect if he has "clearly asserted his right to counsel." 451 U.S. at 485. Such an assertion must be "clear and unambiguous" "to invoke the <u>Edwards</u> rule." <u>Midkiff v. Commonwealth</u>, 250 Va. 262, 266, 462 S.E.2d 112, 115 (1995).

Boothe made no clear and unequivocal request for counsel. <u>See</u> <u>Davis v. United States</u>, 512 U.S. 452 (1994). Rather, his statement that he could not afford an attorney and the accompanying explanation by O'Dell of his right to counsel "sought to clarify one of the rights of which he had already been advised." <u>Poyner</u>, 229 Va. at 410, 329 S.E.2d at 823. Accordingly, there was no requirement that the police stop questioning Boothe.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>