COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Chafin and Senior Judge Bumgardner
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.      Record No. 1420-12-1

ALVIN DANIEL GATEWOOD

MEMORANDUM OPINION[*] BY
JUDGE WILLIAM G. PETTY
JANUARY 22, 2013


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

Victoria Johnson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

Gregory B. Turpin (Clarke, Dolph, Rapaport, Hull & Brunick,
P.L.C., on brief), for appellee.


Pursuant to Code § 19.2-398, the Commonwealth of Virginia appeals the decision of the

trial court to grant Alvin Gatewood's motion to suppress statements he made during an interview

with a Virginia Beach Child Protective Services social worker. Specifically, the Commonwealth

argues that the trial court erred in finding that the Commonwealth did not prove that Gatewood

knowingly and intelligently waived his Fifth and Sixth Amendment rights. For the reasons set

forth below, we affirm the trial court's decision to grant the motion to suppress.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"In an appeal by the Commonwealth of an order of the trial court suppressing evidence, the evidence must be viewed in the light most favorable to the defendant and findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992). We review the fact finding of the trial court "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). "Even if our opinion were to differ," Ferguson v. Commonwealth, 51 Va. App. 427, 435, 658 S.E.2d 692, 696 (2008) (en banc), "we do not substitute our judgment for that of the factfinder," Hamilton v. Commonwealth, 279 Va. 94, 105, 668 S.E.2d 168, 175 (2010). Because appellate courts do not have authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004), we are "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007). Finally, we reverse the decision of the trial court only if it is "plainly wrong or without evidence to support it," Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002), and "we give due weight to the inferences drawn from [the] facts by resident judges," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).

## II.

No person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege is "the essential mainstay of our adversarial system." Miranda v. Arizona, 384 U.S. 436, 458 (1966). When the question to be answered is whether a defendant waived his Fifth Amendment privilege, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Colorado v. Connelly, 479 U.S. 157, 184-85 (1986). At trial, the Commonwealth bears the burden of proving, by a

preponderance of the evidence, "that the accused knowingly, intelligently[,] and voluntarily waived his Miranda rights." Rodriguez v. Commonwealth, 40 Va. App. 144, 155, 578 S.E.2d 78, 83 (2003).[1]

On appeal, "the determination of whether the waiver was made knowingly and intelligently is a question of fact that will not be set aside on appeal unless plainly wrong." Angel v. Commonwealth, 281 Va. 248, 258, 704 S.E.2d 386, 392 (2011). Additionally, "even absent the accused's invocation of the right to remain silent [or his right to have counsel present], the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [Miranda] rights' when making the statement." Berghuis v. Thompkins, 130 S. Ct. 2250, 2260 (2010) (alteration in original) (quoting North Carolina v. Butler, 441 U.S. 369, 373 (1979)).

Further, it is important to note that the

> waiver inquiry has "two distinct dimensions": waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

Id. (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). Additionally, "any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege." Miranda, 384 U.S. at 436. In examining the totality of the circumstances surrounding an alleged waiver, a trial court must consider several factors, including "the defendant's age, intelligence, mental and physical condition, background and

---

[1] Gatewood's only argument was that he did not make a knowing and intelligent waiver of his Miranda rights. He has not argued that the statement he ultimately provided was involuntary in the sense that it was the product of coercion. Therefore, the question of whether "the confession was 'the product of an essentially free and unconstrained choice by its maker,'" Midkiff v. Commonwealth, 250 Va. 262, 269, 462 S.E.2d 112, 116 (1995) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973)), is not before us.

experience with the criminal justice system, the conduct of the police, and the circumstances of the interview." Bottenfield v. Commonwealth, 25 Va. App. 316, 323, 487 S.E.2d 883, 886 (1997).

Finally,

> [u]nder our precedents, once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings. Interrogation by the State is such a stage. Our precedents also place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled. And when a defendant is read his Miranda rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick, even though the Miranda rights purportedly have their source in the Fifth Amendment.

Montejo v. Louisiana, 556 U.S. 778, 786 (2009) (internal citations omitted).

### III.

Gatewood was charged with child abuse and neglect and second-degree murder of the child. On the night of his arrest, Gatewood was given his Miranda rights and interviewed by a detective. [2] Approximately two months later, Gatewood was brought to the Virginia Beach Police Department's detective bureau for questioning by Megan Denham, a social worker employed by the Virginia Beach Child Protective Services.[3] Denham was assisting in the investigation of the underlying charges for which Gatewood had been arrested. Gatewood was

---

[2] The Commonwealth did not introduce any evidence concerning this waiver or interview beyond a stipulation that it did occur.

[3] Code § 63.2-1503 requires the local Department of Social Services, where practicable, to develop multidisciplinary teams, including law enforcement, to share information regarding the investigation and disposition of complaints of child abuse and neglect. The record does not reflect whether Denham was a member of such a team.

brought from the jail in handcuffs for the interview. Unbeknownst to Gatewood, the interview was recorded.[4] At the time of the interview, Gatewood was represented by counsel.

Denham assured Gatewood several times that she was not affiliated with the police or courts, and the only reason they were at the detective bureau was because she "needed a place to interview him." When Gatewood expressed confusion about Denham's role, she repeatedly responded that she was affiliated with a "civil agency" and not "criminal" and that she was there to "help" his family. Denham also informed Gatewood that she did not have the authority to "charge," "punish," or find him "guilty" of anything. Eventually, Denham passed a Miranda rights waiver form to Gatewood entitled "Virginia Beach Department of Social Services Advisement of Rights." After reading over the waiver, Gatewood paused hesitantly and asked Denham, "This can't incriminate me?" Denham replied that any responses were voluntary and he could refuse to answer any question. Gatewood signed the form and subsequently made inculpatory statements. At no time did Denham orally advise Gatewood of his right to remain silent or his right to have his attorney present, even though she knew he had an attorney and court proceedings had been initiated against him.

The trial court made extensive findings regarding the nature of the interview and the manner in which the social worker represented herself and her relationship to the police. Specifically, the court found that Denham was acting as an agent of the Commonwealth, that the interview had been arranged in collaboration with the police detective, and that the interview was staged in the detective bureau so that it could be surreptitiously recorded by the police. The trial court found this to be "extraordinarily disturbing" in that "the police and Child Protective

---

[4] According to Code § 63.2-1516, a person suspected of child abuse may demand that CPS personnel record any interview. Further, the "CPS worker shall inform the alleged abuser and/or neglector of his right to tape record any communication pursuant to § 63.2-1516." 22 VAC 40-705-80(B)(2)(a). The record does not reflect any such declaration, and Denham testified that she did not tell Gatewood that the interview was being recorded.

Services, in collaboration with each other, engaged in the concerted effort . . . to try to find a mechanism that was designed to subvert the Fifth and Sixth Amendment rights of the defendant."  Concluding that the interview was a "deliberate and concerted attempt to re-interrogate" Gatewood about his pending criminal charges, the trial court found that a reasonable person would be unable to appreciate the nature of the interview due to the "misleading and objectively false" circumstances.  In sum, the court found that:

> the statements made by Ms. Denham were deliberate and considered statements intended to induce the defendant, Mr. Gatewood, or a reasonable person into believing that statements that are given to her in that context would not be used against that person in the ongoing criminal trial that was pending at the time and the defendant therefore need not be concerned about the presence of his attorney in that setting or the consequences of his attorney not being present or of a choice to continue to speak with Ms. Denham in that setting.

Accordingly, the trial court held that the Commonwealth did not prove by a preponderance of the evidence that Gatewood knowingly, intelligently, and voluntarily waived his Fifth and Sixth Amendment rights.  Based on the evidence before us, we cannot say that the trial court's factual finding was plainly wrong or without evidence to support it.

IV.

The Commonwealth argues that the trial court's factual finding was plainly wrong and without evidence to support it because the trial court concluded that the term "Miranda" had not been used by Denham, when in fact, Denham did mention it once.  This comment by the trial court occurred several weeks after the evidentiary hearing and appears to be based on an agreement by counsel.  Specifically, the trial court stated,

> I do want to explicitly state into the record something I know we cleared up in an earlier discussion, that is, Ms. Denham, during the course of her reinterrogation of Mr. Gatewood, did not use . . . the word Miranda.  There was some ambiguity about that.  At one time during her examination on the witness stand she explicitly claimed to have used that word or term, whatever it may constitute at this

point but, I believe upon further inquiry from the court that counsel for both parties have agreed that the word or term, that is, quote, <u>Miranda</u>, end quote, was never used by Ms. Denham in Mr. Gatewood's presence.[5]

Because of the Commonwealth's concession on this issue at trial and, as we note below, the fact that this point was a very minor part of the trial court's factual findings and analysis, we cannot say that the ultimate conclusion was unsupported.

The Commonwealth further argues that because the social worker used the term <u>Miranda</u>, and gave Gatewood a sheet with a list of <u>Miranda</u> rights on it, he had been lawfully advised of his rights, understood the gravity of signing such a waiver, and knowingly, intelligently, and voluntarily waived his rights. We disagree. Though a signing of a <u>Miranda</u> rights notice is "strong proof of the validity of waiver," <u>Butler</u>, 441 U.S. at 373, a court may properly conclude that a <u>Miranda</u> waiver has occurred "only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension," <u>Burbine</u>, 475 U.S. at 421.

Here, the sole reference to <u>Miranda</u> by Denham was enveloped within a multitude of other statements she made to Gatewood that a reasonable fact finder could conclude strongly indicated that his right against self-incrimination was not in jeopardy. Early in the conversation, Gatewood specifically asked Denham if the interview had anything to do with his case. Denham replied, "Yes and no. I am a different agency." Denham then repeatedly informed Gatewood she was not part of the criminal investigation, which the trial court found to be "on every measure[,] false and deceptive." While Denham did use the term <u>Miranda</u>, when describing the

---

[5] At the motion hearing on July 3, 2012, the DVD of the confession was submitted into evidence. Excerpts of the DVD were played during the hearing. The court stated that "whatever is contained thereon that the court considers from the DVD for purposes of this motion will be filed and admitted as an exhibit" and the court reporters would not be required to contemporaneously record or transcribe what was being played on the DVD. App. at 14-15. Thus, there was no written transcript of the interview.

waiver form, she couched the term within a confusing explanation about being required to advise him because she could be "subpoenaed." Denham then reiterated that she was not a part of the criminal investigation. Moreover, Denham gave the waiver form to Gatewood sometime after her initial use of the term <u>Miranda</u>, and the form was not labeled <u>Miranda</u> rights, but rather "Virginia Beach Department of Social Services Advisement of Rights." Denham told Gatewood that she was only there to help his family and that she could not punish him, charge him, or find him guilty. Finally, when Gatewood asked whether this would incriminate him, Denham responded that she was "only here for the kids" and that her job was "to protect the kids."

The trial court characterized the interview as an "environment in which a reasonable person would not have understood that Ms. Denham's interrogation or re-interrogation could be used against [Gatewood] in the criminal proceedings against him."

> [A] waiver of the Sixth Amendment right to counsel is valid only when it reflects an intentional relinquishment or abandonment of a known right or privilege . . . . In a case arising under the Fifth Amendment, we described this requirement as a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

<u>Patterson v. Illinois</u>, 487 U.S. 285, 292-93 (1988). Considering the consistently misleading information that Denham relayed to Gatewood during the interview, the trial court could properly infer that Gatewood did not knowingly and intelligently waive his rights. "[T]he accused must know what he is doing so that his choice is made with eyes open." <u>Id.</u> The trial court concluded that the Commonwealth failed to meet their burden of proof that Gatewood's statement was knowing, intelligent, and voluntary because the social worker used "fraud," "deceit," "trickery," and ambiguity when speaking to Gatewood. We cannot say that the trial court's finding was plainly wrong or without evidence to support it.

Citing Burbine, 475 U.S. 412, and Arthur v. Commonwealth, 24 Va. App. 102, 480 S.E.2d 749 (1997), the Commonwealth also argues that any deception by the Child Protective Services worker was constitutionally permissible. Again, we disagree.

In Burbine, police officers falsely told the defendant's attorney that they were "through" questioning Burbine for the night; however, the officers questioned Burbine shortly thereafter and did not inform him that his attorney had attempted to reach him. Burbine, 475 U.S. at 417. The United States Supreme Court held that Burbine's subsequent waiver of his Miranda rights and confession to the crime should not be suppressed because his interaction with the police had not undermined his ability to understand the consequences of signing a waiver. Id. at 424.

In Arthur, the defendant confessed to murdering his girlfriend after the police showed him false forensic reports indicating his fingerprint and blood were found at the crime scene. 24 Va. App. at 104-05, 480 S.E.2d at 750-51. This Court concluded that the interrogating detective's lies did not render the confession involuntary because the defendant's will was not overborne by the deceit. Id. at 108, 480 S.E.2d at 752.

In both Burbine and Arthur, irrespective of information given or withheld, the defendants absolutely knew at all times that they were speaking to a government agent and that any information they gave would be self-incriminating. With this knowledge, the defendants voluntarily confessed to the government agents.

We address an entirely different issue in this case. Here, Denham's statements to Gatewood did not contain deceptive information about the victim or a related event designed to induce a confession. Instead, Gatewood signed the waiver because he was purposefully led to believe that both the interview and waiver were unrelated to the pending charges against him and that he was not speaking to a government agent. See Massiah v. United States, 377 U.S. 201, 206 (1964) (finding Sixth Amendment violation when defendant was induced into confessing by

a co-defendant who was operating on behalf of government agents to intentionally illicit incriminating information. "In this case, Massiah was more seriously imposed upon . . . because he did not even know that he was under interrogation by a government agent."); see also Maine v. Moulton, 474 U.S. 159, 176 (1985) (finding that police illegally circumvented Moulton's Sixth Amendment right when they arranged to record conversations between an informant and Moulton to illicit incriminating information. "[K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity."). Even when Gatewood exhibited repeated hesitance and a lack of understanding about the waiver, the social worker continued to encourage him to cooperate in the interrogation, assuaging his concerns with misleading statements about her relationship to his criminal charges. Indeed, it is impossible for one to "knowingly" and "intelligently" waive rights if one is intentionally led to believe that nothing is, in fact, being waived.

Because we do not substitute our judgment for that of the trier of fact, and the findings of the trial court are supported by the evidence, we hold that the trial court did not err when it concluded that Gatewood did not knowingly, intelligently, and voluntarily waive his Fifth and Sixth Amendment rights during the course of his interview with Denham.

V.

For the foregoing reasons, we affirm the trial court's granting of Gatewood's motion to suppress his statements that occurred during the course of his interview with Denham.

Affirmed.

- 10 -

Bumgardner, J., dissenting.

I dissent. The factual findings and conclusions drawn are not supported by the record. In this case, the record consists of the video recording of the interview by Child Protective Services and the testimony of the social worker conducting that interview. The testimony is primarily a commentary about what appeared on the video that the trial court viewed during the suppression hearing. The definitive evidence of whether the defendant knowingly and intelligently waived his rights and made a voluntary statement comes from viewing the video recording of the interview. Because the events are captured in that format, which constitutes the appellate record, any findings of fact and determinations of credibility would not be entitled to the special deference accorded a fact finder who was evaluating live testimony, about the disputed facts, resting on the credibility of the witness, and which is memorialized only by a cold, one-dimensional transcript.

The video does not provide evidence that the police and Child Protective Services engaged in a concerted effort to subvert the Fifth and Sixth Amendment rights of the defendant. Supposition leads to the conclusions that were drawn; a detached review of the evidence actually presented does not. I would reverse. Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992).